The first case on the call of the docket is agenda number three. Case number 131-608, People v. Jackson. Would the attorney for the appellant please proceed with her argument? Good morning, Your Honors, and may it please the Court. I am Madison Heckel from the Office of the State Appellate Defender here on behalf of Mr. Jackson today. The question in this case is simply whether a told speedy trial clock begins running the day of a trial of demand. This is the interpretation that the State of Illinois has followed for decades, and this is the interpretation Mr. Jackson would like to have followed. When a defendant agrees to a delay from the date of that continuance to the date of the next set court date. The State in this case, however, believes that the trial demand does not resume the speedy trial clock. Ms. Heckel, where in the statute does it say that? What language would you point to? Does it say that it begins upon a demand? Yes. The speedy trial clock says, or the speedy trial statute says that it ends on the day of the expiration of the delay, and that is the language that is up for interpretation today, because we would argue that the expiration of the delay is the demand for trial, whereas the State is believing it is the next set trial date, which adds to the complication and creates confusion in the calculation of the speedy trial period. Can you point us to the specific language in the statute that you're referring to? Yes, sorry. It says in the statute that the speedy trial clock resumes running on the day of the expiration of the delay, and that is the language that in this case, because this is a criminal statute, should be read in favor of the defendant, and we should take the obvious or literal meaning, and the obvious meaning of the end of the delay here would be demanding trial. Counsel? Yes. You've been asked a couple questions about the specific language. Does it require us to take a look at this language that says, on the day of expiration of the delay, the said period shall continue at the point at which it was suspended? Correct. So it would resume running. So if, in this case, 16 days accrued between arraignment and the first continuance, then upon demand, we would begin the 17th day of the speedy trial period. Does that answer your question? It does. Yes, thank you. Counsel, what's the standard of review in this case? In this case, because it is a, we are interpreting the statute, it is reviewed de novo. And so here, to go back to what Justice Holder-White was asking, the, upon delay, or upon demand, the speedy trial clock resumes running. So in this case, on the first demand, it became the 17th day. Whereas the state is arguing that the delay that a defendant is agreeing to when they agree to a continuance is to the next set court date as well as the next set trial date on some unknown future date. And that is, that does not, it is not logical that the defendant would agree to an unknown period of time. The defendant would agree to just the period of time to the next set trial or court date. And then upon the next court date, perhaps they would file another, agree to another continuance, another delay would occur, or they demand trial. But they are agreeing to the time that is known at that date of the continuance. Counsel, as you know, we have students here.  We're always so happy to see them. And I don't know if they've had an opportunity to read the briefs in this case or know the background. Could you talk a little bit about the fact that your client was in custody versus not in custody and what the speedy trial period is? Yeah, I would love to go over that.  So the speedy trial period in the state of Illinois for people who are in custody is 120 days. Meaning upon arrest, they have 120 days that the state is supposed to bring charges, bring charges to trial. Those 120 days can be paused upon agreeing to a continuance so that you can find more evidence, question witnesses, et cetera. And then when you demand trial and the delay ends, the clock would begin running again. So only 120 days should occur between the arrest and the trial date that are attributable to the state. If you are arrested and then released on bond that same day, the clock does not begin to run. And you don't have 120 days, but instead 160 days. There are some more requirements for people who are not in custody to make a sufficient demand for trial. They have to write the demand and file it in court rather than just say, I demand a speedy trial. But if you are not in custody, you have 160 days. So the question in this case is how, when all parties agree to a continuance or there is a delay on behalf of the defendant, how does the paused speedy trial clock resume running? And here, Mr. Jackson, and I would argue decades of precedent in this state, upon demanding trial, the told speedy trial clock begins to run again. Counsel, is there any provision in the statute or any of the Supreme Court rules that allow different circuits to have a different set of rules for the speedy trial clock tolling and resumption? Yes, different circuits can have different rules if they follow certain procedures. Under Illinois Supreme Court Rule 21A, if so long as a majority of circuit judges agree to a rule change and then it is pursued and filed properly, then that rule will come into effect for that circuit only. In this case, in Vermillion County, there was a rule that was county-specific, not circuit-specific. And according to the trial judge in this case, when a defendant had already scheduled trial and then filed a continuance, then the speedy trial clock did not begin running immediately upon the second trial demand. The judge in this case said that was a Vermillion County rule. And he said that in his time as an attorney or a judge in Vermillion County, there had been about three or four different rules. But in this case, this was Vermillion County-specific, not the entire circuit. And also, the rule was never formally filed according to Rule 21A. And so if you are an attorney and you need to calculate the speedy trial period for your client, you could not go reference this rule somewhere to learn how it worked in Vermillion County. And that creates confusion because many attorneys work in many counties. And if there are different rules, it needs to be clear how they are different between circuits. So it was sort of an unwritten rule? Yes. In this case, it was. And I would argue the state conceded that this was not a sufficient rule if it was just for Vermillion County. But the state here, in their brief, said it was not a Vermillion County rule, but that this is the correct interpretation of the statute, which would mean that this is now a statewide question of how the speedy trial clock begins running after it is told, rather than just is Vermillion County's rule a sufficient rule to follow, which I would argue it is not. Counsel, you indicate that this was an unwritten rule. I wonder, would the county or even the circuit have authority to usurp the language of the statute regarding speedy trial? Would they have that authority? No. They can make their own rules that have a few differences amongst the circuits, but those rules still must follow the base of the statute of the Speedy Trial Act. And in this case, the way Vermillion County is following this rule adds language to the act that simply is not there. And it adds a requirement for the defendant to not only demand trial, but then set trial for a separate date, something that is somewhat beyond their control, because the state and the court has to agree to a trial date. So if the state cannot agree to a trial date, then the demand is essentially not a demand, as there's no point where the speedy trial period would begin running again. There are two cases that we came across in our research that seem to speak to this issue. One is People v. Siglar, where we stated that indefinite continuances of trial are anathema to the law, and we held that the defendant had to have known when seeking an indefinite trial continuance that this would cause significant delay, because Randolph County held only two criminal jury sessions per year. So it does, and I don't know if you're familiar with the case, but I would suggest that perhaps that supports the notion that delay occasioned by the defendant lasts so long as it takes to get the case back on the trial calendar. There's another case called People v. Bowman from 1990, where, again, we reiterated that indefinite trial continuances are bad practice. Indefinite trial practices, yes, but that is a question regarding continuances, and this is a question regarding demand. So when a defendant... It's not... I mean, we have to look at the context. There was a demand, certainly, but prior to that, there was a request for or an agreement to a continuance without asking for a new trial date. So that's the entire context that we're talking about, right? That does add a bit of confusion along... I understand there are logistical questions with every court, and this is where scenarios of creating their own rules that follow under Supreme Court Rule 21A would come into effect, where it's not adding language to the Act, but it is clarifying some logistical hurdles that are simply only related to that circuit, as opposed to other courts. But when... So I apologize. Bowman, you said the cases were Bowman, and what was the other one? SIGLAR, S-I-G-L-A-R. So the question... In that, I guess, those cases may say that the case needs to be brought onto the trial. Well, the trial call also is a... To be clear and fair, the issue in those cases is not on point, but there's some language in those cases where the court has expressed that seeking a continuance without a new trial date causes problems, and it's bad practice. It is bad practice, but also a defendant has a right to a speedy trial, to demand a speedy trial. It is a constitutional... But there's also that body of law that if both the state and the defendant bear the blame, then the time is charged against... It's not charged against the state. Right. But also, this is getting into the nitty-gritty details that may be somewhat case-specific, and whereas the question here is more of a simply, how do we calculate the speedy trial? So, because there are instances where, as I said earlier, maybe the state won't agree to a trial date, and then how does that impact if it's put onto the defendant or the state? Whereas the state has no incentive to move forward with bringing trial forward without the speedy trial clock running. That is, the whole point of the Speedy Trial Act is to protect a defendant's constitutional and statutorily protected right to a speedy trial. So while it may not be the best practice for attorneys to file continuances repeatedly with no intention of going to trial, that is not the case... That is simply not what happened in this case. At the point that he demanded trial the second time, this case had been before the court for... Or not this court, but had been going for, I believe, over three years. It had been over a year since the last piece of evidence had been passed between parties. The state should understand that the defendant is going to be ready for trial at some point, and there was no reason that the state should not have been ready for trial at that point. What do you say to the state's argument that this could lead to mischief if the defendant sees that the trial court is backed up and is not going to be able to squeeze this case in for trial because it wasn't on anyone's radar that the defendant was demanding the trial? Well, it may not have been on their radar, but it should be well known at that point that this case is... This case, all the evidence has been produced. We have just been filing continuances. It is... Everyone should have understood we are at the point we are moving to trial. And in the case... In the discussion of mischief or gamesmanship, the statute already has two safety nets written in to protect the state. One being if a defendant demands trial and the clock is running and the state needs more time to obtain evidence, they can request an extension of time to question more witnesses or to test DNA evidence and receive 60 or 120 days depending on the evidence that they are seeking as long as they show... Make a showing of good faith... Of due diligence, I mean. And in this case, that did not happen. So simply, if the state needs more time, they can request more time. And then if a defendant demands trial with only 21 days or less remaining on the clock, again, the state can request more time and be given an additional 21 days. So those are both written into the statute. If there is some unforeseen version of mischief that may come about, the legislature has shown that they are able to act when necessary as shown after People v. Healy where the defendant never made any grand gesture that they were ready or anything agreeing to continuances and then a murderer was released on a technicality and the legislature did not believe that was appropriate and they went and amended the statute as needed. So if some unforeseen example of mischief comes about, the legislature can act and add a protection that we can hypothesize about but is purely speculative and does not apply in this case. Counsel, we had somewhat of an odd situation in this case where the parties were in front of the court. They indicated the defendant wanted a trial and the trial court expressed difficulty about being able to try it in time and then the trial court set it for a trial and said that, you know, I'll find someone to try this case and then there was a two hour or so lapse and the state comes back and says, are witnesses or are witnesses not available? How did the trial court handle that and was that appropriate? The trial court in that instance, I believe, did what he could in that instance and had the state said we need more time than is remaining, I believe about 28 days or something along those lines was remaining at that point, if the state needed more time, that was where they could have requested more time to get the witnesses before the court and then make a showing of due diligence but the court did not do that or the state did not do that and so the court wasn't required to make any sort of determination at that point. All parties including the trial court knew that the speedy trial clock, the defense attorney believed it was going to run at the end of May and the judge did schedule court outside of that period or the trial date outside of the speedy trial period and defense counsel did what was required of him and as shown in Cordell, he objected and then he filed the motion to discharge upon the speedy trial period being reached. The trial court alternatively could have found another judge to try and do the court within those days but again, if the witnesses weren't ready, that was a pump on the state that they needed to request additional time which they did not do in this case. Ms. Heckel, you cite people versus our decisions and people versus Hannon and people versus Quigley. Do we know whether the defendants who demanded trial in those cases were in custody or out on bail? I don't actually in those cases. As I'm sure you know as authors of many of these decisions, the calculation of the speedy trial period is not written out word for word in most of these decisions so these may have been different but again, the difference between defendants who are in custody versus out on bond or bail are the sufficiency required of a demand and the number of days that are allowed before the speedy trial term runs. Nothing in the statute says that there is a difference in how the speedy trial term begins to run. Once a sufficient demand is made, whether that demand be sufficient for a defendant in custody or sufficient for a defendant out of custody, once a sufficient demand is made, the speedy trial term begins to run that day. What constitutes a sufficient demand? Well, that would be, there's no magic words but making clear that you demand trial and you want to protect your speedy trial rights. Can it be oral or written? Depending on if you are in custody or not. If you're in custody, it can be oral but if you are not, it must be written and filed. But I would argue that that is not at issue in this case because all lower courts agreed that the demands were sufficient and that should not be overturned absent an abuse of discretion which has not been argued by the state in this case or at the appellate level as well or even the trial level. Will you bring your argument to a conclusion, please? Yes, of course. Thank you. The Speedy Trial Act is clear and unambiguous and once a defendant demands trial, a told speedy trial term begins to run again. This is clear and makes the calculation of the speedy trial period simple and straightforward leading to consistent calculations across the state and across different levels of a case. The state's interpretation that the speedy trial clock does not resume running until the next set trial date is confusing and convoluted and unworkable as shown by the state's different calculations of the speedy trial term at each stage of this case. This interpretation is radically different than how this court has ever read the Speedy Trial Act and the state's argument to implement it statewide is insufficient. Mr. Jackson's interpretation is clear, workable and predictable and is the correct interpretation of the statute. Thank you. Thank you, counsel. Is the appellee ready to proceed? Yes, Your Honor. Good morning, Your Honors. Opposing counsel and may it please the court. I'm Assistant Attorney General Madeline Callahan on behalf of the people. Your Honors, today's case is about the straightforward application of statutory language that this court has already construed numerous times. In People v. Cordell and in People v. Hartfield, this court explained that under subsection A of the Speedy Trial Statute, which is the subsection at issue today, any delay tolls the speedy trial clock unless the defendant objects to that delay. This court has already twice explained that under the statute's text, the way a defendant objects to delay is by making a speedy trial demand and therefore a, quote, speedy trial demand is simply synonymous with an objection to a proposed delay. Today's case merely requires this court to apply its precedent to these facts and in so doing, this court should find that defendant was timely tried and affirm the decision of the lower court. Now looking first to the text of subsection A. As this court has already noted numerous times, under subsection A, when a defendant is in custody, the clock starts automatically upon the defendant being taken into custody. But it tolls whenever there is any delay that is, quote, occasioned by the defendant. The statute goes on to explain that, quote, delays shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written or oral demand for trial on the record. Therefore, under subsection A, a speedy trial demand is merely the means by which a defendant prevents the clock from tolling due to delay. Do you agree that this is purely a de novo case or is the trial court entitled, with everything going on, any level of discretion? Your Honor, we agree that interpretation of the statute and how it works is certainly de novo review. Any questions that are purely of fact, such as, for example, whether or not a given date was actually a set trial date, for example, would be an abuse of discretion standard. But certainly interpretation of the statute is purely de novo review. And importantly, under the statute, the delay that is relevant is any delay in proceedings that would necessarily postpone trial. And this court explained that in Cordell. And again, in People v. Cross just a few years ago, that any delay in proceedings occasioned by defendant, namely any delay in proceedings which defendant does not object to by demanding trial, quote, causes a postponement of the 120-day speedy trial term and thus tolls that term under this court's holding in both Cordell and Cross. So, counsel, in this matter, can you tell the court what were the days of expiration of delay? Absolutely, Your Honor. So, there are two time periods in question. The first is between March 22, 2022 and May 3, 2022. And May 3 would be the expiration of delay in that first time period. Because on March 22 of 2022, defendant appeared in court, requested trial, the court offered a May 3 trial date, and defendant agreed to that date, expressly stating, yes, we'll set it there. And that is a straightforward application of People v. Cordell, wherein this court held that  and then agrees to a future trial date upon making that request. The period is tolled until that set trial date. But there was no trial on that date, right? No, there was no trial on that date because there was ultimately a continuance. But that would be the expiration of that delay to which defendant did agree. May 31? No, I apologize, May 3 of 2022. Okay, May 3 would have been the expiration? Yes. Even though the trial court did not honor the original trial date that was set and it was continued? That is correct, Your Honor. May 3 would be the day that that clock started running again. Okay. Because that's the expiration of the agreed-upon delay. And the second time period in question... But how can you say it's the agreed-upon delay when you withdrew the agreement within, you know, two hours after the trial was set? My apologies, Your Honor. That actually occurred... That's regarding the second period in question. There are two periods in question in today's case. The first is between March of 2022 and May of 2022. And the second is between... Is in 2023. I'm sorry, that's correct. Yes, so speaking solely to that first period, May 3 of 2022 would be the expiration of delay because that is the date that defendant agreed to go to trial. And so that is when the clock would start running. Flashing forward to the second time period at issue. That really started in August of 2022. The reason for that is because in August of 2022, the case was set to go to trial, and five days before trial, defendant requested new counsel. He was given new counsel, and in order to give counsel the time to prepare for the case, the case was taken off of the trial call and put back into a pretrial posture. Between August of 2022 and April of 2023, defendant routinely requested continuances more than four times because he had ongoing plea negotiations with the state. So during... Is the defendant contesting the fact that those days are attributable to him? I mean, don't we really need to get to that last time that the case was set for trial? Yes, Your Honor. So the date in question that I think really comes down, this case comes down to, is April 25, 2023 because... And is that an expiration date? No, it is not. And the reason for that is because in order to understand that, I do need to walk back a little bit because in March of 2023 was when defendant made his last request for continuance. In March of 2023, he simply requested a status hearing on April 25 without setting any trial date as he had been doing for about eight months during plea negotiations. So he requested for a status hearing on April 25. He appears at that status hearing and says, I want trial. The court, in an effort to oblige, says, you know, I don't have an available trial date until July 18th, but I'm sure we could find another judge to try you on May 2nd. Notably, that trial did not get scheduled on any judge's or courtroom's calendar. It never actually got docketed anywhere. This was all under the assumption that it was scheduled on May 2nd. But your position is that once the defendant said, I want to have a trial, I'm ready for trial, the clock did not start running again. Instead, it didn't run again, start running again, until it actually, the date that the judge ended up setting it. That's correct, Your Honor. And the reason for that is because when a defendant agrees to a continuance so it ends in, for example, a status hearing, as happened here, what that defendant has necessarily agreed to is the next available trial date after that status hearing. So, for example, breaking it down, if on January 1st, the defendant requested a February 1st status hearing without setting any trial date. Counsel, would you use the actual facts in this case? Absolutely, Your Honor. So in March of 2023, I believe it was mid-March, the defendant requested a status hearing on April 25th without setting any trial date. What he has necessarily agreed to in doing that is agreeing to the next available trial date after that status hearing. Just like a defendant could not, in March of 2023, agree to an April 25th trial date and then come in on April 1st and say, I want trial tomorrow, and attempt to unilaterally revoke his acquiescence that he had agreed to. Counsel, did the defendant demand a trial at the April 25th, 2023 trial date? Your Honor, he certainly requested trial. Did he make a demand, did his lawyer make a demand for speedy trial on that date? Under what demand means under the statute, he did not because a demand under the statute is an objection to a proposed delay. Counsel, did he make a demand for speedy trial on that date or not? I mean, you can say no if you think it's no, but I don't appreciate the word games. I really would like you to answer my question. My apologies, Your Honor. No, he did not. He did not make a speedy trial demand. And so, Counsel, the court set a trial date, and then a couple of hours later, the state announced that it had a problem. So, isn't it true that the defendant and the state initially agreed to a trial date within what counsel for the defendant thought was when the speedy trial rights would run? Is that right? Your Honor, that's not our understanding of the facts, and it wasn't the circuit court's understanding of the facts. So, did the circuit court set a trial date within the speedy trial period? I apologize. I just want to make sure I understand. Are you asking, did it set a May 2nd trial date? Well, I'm talking about when the trial court said, I don't have anything available, but we can find someone who would be able to try this case, and let's set this date for trial. And then a couple of hours later, the state comes back and says, our witnesses aren't available. So, and then the judge set it outside the speedy trial time period. Is that what happened? No, Your Honor, for a couple of reasons. The first is that we would note that the circuit court found that what occurred was not tantamount to a date being set and then rescheduled because no courtroom had actually received the case and no judge had been found. But even if May 2nd was a legitimate trial date that then got moved, defendant was still timely tried because between March of 2022 and May 3rd of 2022, the clock was told that during that first period it issued, the clock was told because defendant agreed to the May 3rd trial date and thus allowed the clock to toll. And between April 25th of 2023 and May 2nd, assuming May 2nd was an actual trial date, for the exact same reason, the clock would have tolled because defendant would have, under that reading of the statute and that reading of the facts, defendant requested trial on the 25th, received a May 2nd trial date, and agreed to that May 2nd trial date. So the clock would have been tolled during that time period. And when you do the calculations, understanding that both of those time periods were tolled under a straightforward application of Cordell and Hartfield, it turns out that defendant was tried on the 119th day of his trial term. So regardless of whether or not May 2nd was or was not a real trial date, I guess you could say, he was nevertheless timely tried in this case because of the tolling. I want to go back to this, it wasn't a real trial date issue. So, is there some notice or something that's given to defendants that, you know, until this case is assigned to a courtroom and it is somehow docketed, this is not a firm date, don't, don't consider this to be your trial date, what kind of notice is given to people? Because, you know, when I practiced, you'd go to court and if you got a trial date, you better be there at 9 o'clock and nobody was sending you something else saying now this is real because it was docketed and somebody else did something to get it. Where does this come from?  that this is somehow a new, you know, a nuance. Is it specific only to Vermillion where this happens or can you expand on that a little bit? Absolutely, Your Honor. So, it's actually, it's actually really specific to this case which is that in this case what happened is the court said I don't have availability until July. I'm sure we could find another judge to try you on May 2nd if that's the date you want. And also, both parties agreed they could be ready on that date, correct? They did initially agree that, Your Honor. Yes, they did. And then about two hours later, they took a brief recess. So, they took a brief recess or was it a situation where the case was determined to be, you know, done for the day and then the state went back to their office and found out about the problem with the witnesses. Does the docket show that it was not complete yet and they resumed for what? To be really honest,  unfortunately, the record is a bit unclear on exactly the specifics of whether it was a recess or whether it was a full ending of proceedings that then got resumed. But, what we do know based on the record is that about two hours later, the case was recalled and the state said, we've contacted our witnesses and they have previously planned medical surgeries. But that doesn't appear anywhere in the record. That explanation's not in the record, is it? It is, Your Honor. It was in the record. Oh my gosh, I'm so sorry. It was, I want to say it was around record page 169 to 170 the state, it was brief, admittedly, but the state did say they have previously planned surgeries, they're not available. Ms. Callahan, I had brought up with Ms. Heckel two cases, one called Sigler, a 1971 case from this court, and another one called Bowman. You haven't cited those cases either and I'm wondering whether you're familiar with them and what you have to say if you are. You know, Your Honor, unfortunately, I'm not familiar with them. I'd be happy to provide supplemental briefing if that would be helpful. I would note that it sounded like, based on your colloquy with my colleague, that those were both pre-1999 cases and while we would certainly agree that seeking open-ended continuances without setting a trial date is likely not recommended for any party, we would note there was a really important change in 1999 to the speedy trial statute issue, which precipitated this court's holding in Cordell and opposing counsel talked a lot about the decades of precedent but those decades came before the statute was amended in 1999. In 1999, prior to 1999, all the statute said was that every person in custody shall be tried within 120 days from the date he was taken into custody unless delay is occasioned by the defendant. In 1999, the General Assembly amended the statute in response to the appellate court routinely holding that defendants only occasioned delay if they expressly requested a continuance and the General Assembly therefore added an extra requirement for a speedy trial demand in 1999 by adding the language which is really at issue today which is delay shall be considered agreed to by the defendant unless he objects to the delay by making a written or oral demand for trial and as this court post-1999 said in Cordell and again in Hartfield the statute puts the onus on the defendant to take affirmative action when they learn of a proposed delay by objecting to that delay through demanding trial. And wasn't that the issue in Cordell that counsel for the defendant didn't object and to the contrary said that date is fine which is not the situation we have here? Your Honor, that is what happened in Cordell and I will note that for two of the most important time periods at issue that is what happened here. In the 2020 opposing counsel is saying that on March 22nd 2022 when defendant said I want trial the court said how about May 3rd and defendant said that sounds good that the clock should not have told that that was enough to start the clock running and under a straightforward application of Cordell that's not how the statute works in that situation. If defendant requests trial and then agrees to a future trial date that is proposed he has agreed to the delay leading up to that trial date and similarly on April 25th 2023 if we treat May 2nd as a real trial date he said I want trial the court said how about May 2nd and defendant said that sounds good and so between April 25th and May 2nd he agreed to that delay a seven day delay and so are you saying that the only way for there not to be a delay a trial setting is to go in and say I demand this trial start today how is that workable? The way it would work in practice is that if a  appears at a hearing he would say I want trial and if the court says I don't have availability until a month from now all the defendant needs to do is say I object I  speedy trial and that alone makes sure that the clock does not toll because that is exactly what the statute requires and what this court has routinely held is that the onus is on the defendant to object to a proposed delay when it is made in order to prevent the clock from tolling otherwise the clock does toll and that makes sense when we consider that as this court explained the speedy trial clock is intended to be a shield against the state unnecessarily dragging their feet and     that the defendant can routinely agree to delays and then retroactively attempt to  their conviction despite having acquiesced to the delays in question so under your scenario is it so they say I object I demand a speedy trial are they allowed then to acknowledge they are available on a date I guess I'm not understanding exactly how that will work because I mean you do have to make sure maybe that you don't have another trial going in another room or in another county so they would be able to say I object I demand a speedy trial but then is there an acquiescence if they did say but I acknowledge I would be prepared on May 2nd I'm really struggling with you know what you say it has to be an objection but then is there a component that is do they acquiesce by saying but I would be available on that day Your Honor I think that as long as they levied an objection to the proposed delay they have done what the statute requires them to do as long as I should say they levied an objection and demanded trial in that objection that is sufficient and because defendant did not do that here and was timely tried at minimum on the 119th day we would ask that this court affirm the holding of the lower court thank you very much thank you Ms. Callahan Ms. Heckle any rebuttal thank you the state is attempting to shift this case to be a question of  this is a case about the statutory interpretation of the speedy trial act first to point to the first trial demand at that point   all parties at every stage only 16 days had run against the defendant from when he had been  to arraignment so when Mr. Jackson made a demand on that day any day that was 104 days or less in the future was within the speedy    is what Cordell says that any trial suggestion whether within or without the trial period needs to be objected to but that's not what  held in Cordell the  first demand was outside the 120 day period or it may have been 160 I'm unsure on the defendant's incarceration he was offered a trial date outside of the speedy trial period and he didn't say anything   at the second demand when the first May date was offered he didn't object because again it was within the speedy trial period but when the July date was  hours later he didn't say  at the     was hours later he   because again it    speedy   but when the first May date was hours later he didn't object because again it was within  speedy trial period but when the first May date was hours later he didn't object because again it was within the speedy trial period but when the first May date was hours later he didn't object because again it was within the speedy trial period but when the first May date was hours later he didn't object because again it                   again it       but when                              object